Good morning, your honors. My name is Lenore Glazer. It's my great privilege to be here on his behalf. Edgar Acevedo pled guilty to the charge of conspiracy to kidnap, and that is all he pled to, though the government argues he pled to more than that. The sentence in record appendix at page 4. The sentencing, the PSR report also indicates that's what he pled to. That's the sealed appendix at page 4. There are two enhancements which were given from the guideline that impacts the charge. The defendant narrowly pled to a narrow group of facts at his Rule 11 hearing. The government then provided the probation office with an expansive set of facts, much broader, innuendos, statements from alleged, well from detailed, intensive objections to those facts, provided in detail alternative set of facts, questioned some of the conclusions drawn by the government in those facts, and questioned with concrete analysis the credibility of some of those witnesses. Counsel, what gives that detailed narrative any evidentiary weight? It's kind of a counterstatement of your client, but it seems to be only that, and I guess the question is what gives it enough evidentiary weight that would require the district court, which I believe is your position, to engage in some kind of analysis of competing facts and then offer a resolution of it? Aren't our cases clear that something more is required than just the kind of narrative that your client gave? If the judge is going to have to engage in some fact finding to what is presented by the defendant, the defendant, it's not like U.S. v. Prochner, I'm probably saying that wrong, but in which the defendant simply denies the facts. What Acevedo does is he provides a detailed narrative equivalent to the government's self-serving statement, if you will. The defendant shows many of the objections as noted in the reply brief are actually using the government's own evidence to show discrepancies or false statements in the government's version of the facts. I think that while I don't think this court has said particularly what has to be, what the particular format has to be for the defendant, but where there is a clear material difference of fact, that's what this court said in U.S. v. Jimenez-Martinez, in which the government, there was a drug case in which quantity was an issue and the government created a larger, argued for a larger quantity based on the fact that there was a statement from a co-defendant. The defendant said it couldn't possibly have been that conversation because there was no language in common between the two of them. That statement not even considered by the district court, this court said where there is a material statement of facts, the court has to, the district court has to take that into consideration and resolve those facts. The danger I think in not, I mean and I think the case law actually does, I mean the U.S. v. Oreciado says, which is also this court saying, the PSR is not the be all and end all of the fact statement. The court has to take into determination those facts that are laid out in dispute. Otherwise the problem you have is that then the defendant pleads to a set of facts in his rule 11 and the government is allowed to say whatever they want to say, whatever they want to say to support whatever enhancements are there. And I believe particularly because the government has the burden of proof on the where there is a serious narrative of differences as there is here. So just how would this play out? I mean you have the pre-sentence report which I gather ascribes a role to your client, a role involving planning, how the crime was carried out, how he behaved after the crime was resolved, perhaps some involvement with the ransom money and so forth. And he denies a lot of that. Is it your position that just in light of that dispute the judge should have said okay, there is a dispute here, in order to resolve it I need some evidence. And so I want the government to present evidence supporting its characterization of his involvement and your client then has to present counter evidence Is that the way it should play out? There should be some kind of evidentiary hearing with witnesses? As a practical matter in this case with the dispute of material facts, the challenges to credibility that were founded in actual known evidence as laid out in the objections, practically speaking I think in this evidentiary hearing as to some of it in order to resolve those issues. As a general rule I think this court has stated that the district court has the discretion to determine when it's, if it's needed or whether those facts can be resolved without an evidentiary hearing. To the degree that there isn't an explicit demand for an evidentiary hearing I think, and it's me so I can say it was rather unartful, but it is in the record that there is a discussion within the, right in the beginning of the sentencing transcript in which we explain to the judge that we believe he has to resolve these issues, that these issues are fundamental to the determination of these enhancements. Why couldn't, why couldn't he resolve them on the basis, I mean I'm talking about the firearm and the ransom, why couldn't he resolve them simply on the grounds that they were foreseeable under the circumstances of this case, whether in fact the defendant did foresee them or actually knew them? Well I think that would be somewhat of a distortion of what the conspiracy rule requires because it does require that in a conspiracy a person is responsible for what is reasonably foreseeable to them and their position in that conspiracy. But I also think what happens here is that the judge conflates that and assumes for example with the gun there is no, there's no dispute that a gun was used, there's no evidence that Acevedo knew that a gun was going to be used. The fact that a gun was used is not what a, what reasonable foreseeable requires and that's sort of what the judge says is that since a gun was used, since this is a violent crime, he would have known it. But if that was true then it's an element of the offense, it's the central integral to the offense. Why do you say that? Why is it an element of the offense? Well I think, I don't think it is. Everything that is foreseeable does not necessarily happen. But what is foreseeable may be considered on the question of enhancement. I think that there's no evidence in this case of the foreseeability of the gun as to Mr. Acevedo. There is nothing in the record that suggests it. So then what the judge is arguing, which is what, the argument is basically that because it was a violent crime, he should have known a gun would be involved. I don't think that's sufficient to raise the specter of the enhancements. Could I have one more minute, your honor? Yes. Thank you. I just, and I realize I, I use my time. I do want to say that if you're, if the court does consider these issues and returns it to the district court, I do think based in U.S. v. Manson that this case should be returned to a different judge. This judge actually only had the case for- That's all in your brief. Thank you. Okay. Thank you very much. Your Honor, may it please the court, Randall Kram on behalf of the government. To start with the broader issue of what the court was required to do under the circumstances of this case, I would agree with what Judge Lopez was asking about that in our view, the questions that are the opposing statement or counter narrative that was proposed simply didn't rise to the level or require a resolution of every issue it stated. As we point out in our brief, a number of the points were matters of inference and not even really opposing a fact the government stated. For example, he disputed that he actually had lived with one of the other co-conspirators for very long. That's not something that we had a position either here or there on, and it wasn't really directly contrary to anything we said. In a few specific respects, it did differ. Perhaps most clearly with respect to his conduct after the kidnapping took place, we reported citing to one of the co-conspirators that he was, and cooperating witnesses, that he was observed actually at the place where JP was being held. He said that he wasn't there. That was really one of the few that was a direct conflict. So the rest were really matters of interpretation or inference based on facts that weren't really in dispute. And in that sense, I think the court really wasn't under any obligation to resolve them, and it's, as we point out, the court could have found as it did without resolving them. It could have accepted matters of inference. In terms of his involvement after the kidnapping, didn't the pre-sentence report indicate that he was found with telltale material on his fingertips that would have come from handling the ransom money? Isn't that? That is yet another factor. I mean, and there's also the fact that you have phone calls, including on the night of the conspiracy between another co-conspirator and him. There were various facts that the court could have relied upon. And that's the second point I want to make, is to the extent that there were issues that were actually put in dispute, that may be one of the few that he was actually, whether he participated in any way after the kidnapping took place. The court could have resolved them on the record it had. And to suggest that the government's evidence or information in the PSR stood in no greater stead than the counter-narrative is not really true. We're citing to a cooperating witness who says that he was there. And we're also talking about, you know, there is factual evidence, the phone calls, the evidence of the glowing material on his hands. It tends to support that. I think the court could have resolved that without asking for a hearing, which, as we also point out, the defendant didn't ask for a hearing. Just as a general proposition, is the court entitled to record the factual material in a pre-sentence report a degree of reliability so that a simple counter-narrative of no, but does not overcome the reliability of the pre-sentence report? Is that the law as you understand it? Well, that's what I understand, and that includes from the opinion on St. Cyr, which was cited by the defense in the reply brief. The case also says that they have to be put in material dispute, and unless there's evidentiary, some evidentiary proffer or evidence that goes to the contrary. And that's important to note here. There was not, in the reply brief, a defendant suggested there was a proffer of evidence, but there wasn't a proffer of evidence, there was a statement. It wasn't a suggestion that this other witness will say that it didn't happen that way, or that he wasn't there. No, but in this case, the witness is the defendant, he's there. Why shouldn't the defendant's contradiction be taken as a proffer as to what he would give in evidence under oath if an inquiry was made? And it is, assuming it was a proffer, I think my response would be that it wasn't so sufficient or so credible that the court couldn't resolve it based on the record that it had. Again, taking as an example the statement that he wasn't there after the kidnapping, that again, one of the more clear contradictions. The court had for it a proffer from a cooperate witness that said he was there and other information that tended to point in that direction, including his participation in at least one planning meeting right before the event, the fact that he drove them to the place where he was held, the fact that the material showed up on his hands. Even assuming that on that point, and I think it's fair to say that some points have a little greater credibility than others or are more directly contrary than others, there was sufficient information in the record without holding a hearing to resolve them adversely to him. The court would simply have found that that wasn't a credible assertion based on since there was no more than the assertion that he wasn't there. What about the proposition that there was a firearm involved? I mean, it's his basic version. That was a complete surprise to him. He did not understand that that was going to be the case. I mean, the district court seems to take the view that any time you decide to engage in a kidnapping, which is a crime of force and violence, it's reasonably foreseeable that somebody may use a gun, whether you anticipated that or not. Is that your understanding of how the district court looked at it? And is that good enough in the face of an assertion from the defendant that, that was a complete surprise to me. I never expected that to happen. Right, I mean, I think I would interpret what the judge said somewhat in light of what the government argued this court has held in other cases, that you can look to the overall conversation to get a sense of what the court may have been thinking about. And here, I think it's the government did point out that there was a little more information than that to the court. The court could rely on about the nature of the events that led up to it, the way that the kidnapping took place, the fact that the gun came out right at the beginning, sort of the overall course of conduct tended to support a sense that this was part of the event from the outset. So there was the court sort of, to the extent that it suggests that it was almost a per se rule, that any time we have a kidnapping, a firearm was foreseeable. I would interpret that in light of what the government's argument was, which was not that, which was not that every kidnapping for ransom involves a firearm, and it's foreseeable in every case. But under the circumstances of this case, the way in which it took place, it was foreseeable to him. And I would add a little to that, because I think it's important, somewhat left out of the record, there's a number of undisputed facts relating to that particular enhancement. One is that two cooperating witnesses said that two, both members of the, who took part in actually taking J.P. from the car, were armed. And that's Gonzalez and Alberto Moreno were both armed. The defendant here was the person who drove both of them from the place where they met to plan it to the place where they kidnapped J.P. and brought him back into the car where Acevedo was the driver. During the course of it, they stepped forward and took him from a car right in, that was blocked in right in front of where the van was that Acevedo was driving. And there's testimony from another person who was there, I think it's Torres, that says that she observed them brandishing a firearm, at least one of them, Alberto Moreno, brandishing it as they did so. So there's a lot from which the court could have found that, in fact, he did come to know. You couldn't meet with some people, plan a kidnapping, drive with them in your van all the way to the place, block them in and have them run forward, and never figure out that one of them has a gun. So there's more here than there, than you might sort of let your alleged leave in some sense. And those things are really not disputed. But I would also add that the circumstances of the kidnapping, including, which the government did argue, that it took place in daylight. It took place at a time when you would need to subdue somebody rapidly. You couldn't really run the risk that they would say, let me out of here. You need them to come. And the fact that it took place, that they ran forward and were part of the kidnapping, that would have been understood. So again, while there's not direct evidence that he saw it, his argument that he was surprised doesn't necessarily disprove that he could have, he was surprised, essentially, at the meeting. Because he doesn't say he was surprised at the time that it took place. He said he didn't hear about it at the meeting. That that doesn't disprove the rest of the inferences that could be drawn. Assuming he didn't know about it at the meeting, that he didn't figure it out at some point prior to the time that it took place. May I ask you to comment on one issue which we haven't heard about in argument this morning, and that is the sentencing disparity issue. I, of course, I know your position in the brief, which is basically that we're distinguishing between cooperating and non-cooperating witnesses, which I understand, the one point that I think that maybe not necessarily, that does not necessarily resolve is that as I understand it, and you correct me if I'm wrong, if I understand it, the sentence received by, I think it was Vasquez, who was the organizer of this conspiracy, was less than the sentence that the defendant got. If that is correct, could you comment on how we reconcile that? Well, your honor, without knowing, and I have to say that I don't know the calculations that were behind that sentence, so to compare, and that's one of the things we point out, is there's nothing in the record about their criminal histories and about the other information that would have gone on to calculate their guidelines. What we know is simply their offense levels. I see. And so without, on this record, on the information we have here, there's no basis for knowing whether, maybe for whatever reason, although he was a leader in this particular endeavor, his history was, you know, was no more or, you know, similarly small. And that that would justify, that with the cooperation would justify the disparity. But that's the problem we have here, is that usually with a claim of disparity, you need to be comparing apples and oranges, and you need to have essentially complete information about both, you know, defense level and criminal history, and what any departures or deviations were based on, and that's not in this record. So the disparity claim can't really, you know, get past the starting gate. I have a question related to that. In an instance where there are multiple defendants and one co-defendant is sentenced first, how does that person preserve the disparity argument, one? And two, how, is there any opportunity to make the argument to the district court? Apparently not. You know, this is a good point. And to be honest, I, I don't know exactly how that would be preserved. I, I, presumably that, now I, I guess one partial answer to that is that the idea this court is recognizing defendant disparity is really not aimed at co-defendant disparity so much as it is aimed at national disparities. And that's a relatively small subset of claims that co-defendant disparity that this court has considered would, could rise to the level of being cognizable. But, but we have several cases now, though, that do go into relative culpability. Right, and so where it does come up, I think that there would be, I can see that there would be some issue for it. I, I don't know whether there would be an opportunity to seek clarification or consideration of the sentence following, you know, at, at some point following others. But I, you're right, you're right, I don't know the answer to that. Would a better rule, a more efficient rule be one that we just say for appellate purposes, we will consider it preserved in all instances? Well, I think that would sort of, in some sense, it would make it easier for defendants to make them. I understand that it, that it would do that, but it would also create a situation where you'd be holding up appeals potentially for a while. I mean, some of these cases, they are, the information doesn't come around until later. So you'd be, you know, you'd have an appeal that would wait a long time until the information comes along. Most people, I'm not sure even defendants, would naturally want to wait until everybody has been sentenced. Cuz that would effectively, in order to, your, your honor's point about preservation gets you past one step, in some sense, that it, but it doesn't get to the point of when, when, when you could actually decide or address it. Which would still have to wait until everybody had, every relevant person had been sentenced. Just one, one question, I just, the I just want to, I guess, test or ask you about the, the scope of a position that you seem to be taking in your brief. You, to some extent, you disparage the detailed statement of the defendant by, by saying it is just a counter-narrative, that it's not in any evidentiary form. Justice Souter made the point that it might be more accurate to view that, I mean, the defendant is a witness to his own participation. And it could be viewed as a kind of proffer of what he would be prepared to say. It, it, it put under oath. Are you suggesting that in order to really generate a factual dispute that the district court might actually have to have some kind of hearing on? That it had to be in some evidentiary form, for example, in an affidavit of some kind, or, or in some testimonial form. Is that your position? Well, I would think it would certainly give it a lot more weight if it wasn't an affidavit form, because these are statements, you know, again, I understand that the attorney is a representative for the client and, and that kind of thing. But without an affidavit or some sort of sworn statement, you are sort of left not sure exactly what these stand on in terms of, of their, in what weight they're entitled to. And, you know, as we point out in this case, one of the problems is not necessarily only, or one of the primary problems is they're not really disputing the facts, but disputing inferences. So they, they don't, it's not really a matter of a question about whether we accept his, his statement or not, but they don't really put at issue what the government was arguing. But I do think that absent some sort of, I, I don't know of a case in which we treat them as a proffer in having the same weight as an affidavit is what I'm saying, and, and absent some sort of step in that direction, which I, I don't know that any court has taken, then I think they do sort of primarily counter-narrative unless they add or append or reference real evidence. Thank you very much.